NOTICE

Decision filed 02/19/21 The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 170249-U

NOS. 5-17-0249, 5-17-0254 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | Nos. 15-CF-1364 |
| | ) | 15-CF-1365 |
| | ) | |
| MARLON M. HUMPHRIES, | ) | Honorable |
| | ) | Robert B. Haida, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Cates and Moore concurred in the judgment.

**ORDER**

¶ 1   *Held*: The circuit court's order denying defendant's amended motion to withdraw guilty plea is affirmed where the record sufficiently demonstrates substantial compliance with Illinois Supreme Court Rule 402(a). Defendant's argument that his partially negotiated guilty plea was not made knowingly and voluntarily is without merit, given that the court properly admonished defendant at the time the sentence was imposed, and the guilty plea resulted in a sentence within the negotiated range. Counsel's failure to advise defendant that accepting the negotiated plea agreement with a 45-year sentencing cap precluded defendant from appealing his sentence did not prejudice defendant.

¶ 2   This appeal concerns a partially negotiated plea agreement entered into by defendant, Marlon M. Humphries, in which he pled guilty to two counts of aggravated

1

criminal sexual assault (720 ILCS 5/11-1.30(a)(2) (West 2012)) against his victim, K.R., and one count of criminal sexual assault (720 ILCS 5/11-1.20(a)(1) (West 2012)) against his victim, M.W. In exchange, the State recommended a combined sentencing range of 25 to 45 years' imprisonment. Defendant was subsequently sentenced to 45 years in the Illinois Department of Corrections (IDOC) followed by the extended term of mandatory supervised release (MSR) of 3 years up to natural life, as determined by the Prisoner Review Board.

¶ 3     On appeal, defendant asserts that his guilty plea was not knowing and voluntary. In support, he contends that the circuit court failed to properly admonish him pursuant to Illinois Supreme Court Rule 402(a)(3) (eff. July 1, 2012) and Illinois Supreme Court Rule 402(a)(4) (eff. July 1, 2012). Defendant also contends that neither the court nor defense counsel admonished him that he could not challenge only his sentence on appeal as a consequence of agreeing to a sentencing cap in the partially negotiated plea agreement. Accordingly, he claims he was deprived of his right to effective assistance of counsel during plea negotiations. For the following reasons, we affirm.

¶ 4                                    I. Background

¶ 5     On March 30, 2020, the State filed a motion to consolidate appeals for argument and decision. This court entered an order on April 3, 2020, indicating that the oral arguments for the appeals in cases 5-17-0249 and 5-17-0254 would be scheduled on the same day before the same panel of judges. Because the report of proceedings and common law records are identical in both cases, we determined on June 3, 2020, that the issuance

of one decision on appeal would be appropriate. We will now address the merits of this consolidated appeal.

¶ 6    On November 20, 2015, defendant was charged by indictment with two counts of aggravated criminal sexual assault, both Class X felonies, in 15-CF-1364 (720 ILCS 5/11-1.30(a)(2) (West 2012)) in St. Clair County, Illinois. The indictment alleged that on October 18, 2014, defendant, by the use of force, placed his penis in the vagina of K.R., born on March 18, 1963 (count I), and, in doing so, caused bodily harm to K.R. by dragging her body on the ground. The indictment also alleged that defendant placed his penis in the mouth of K.R. (count II), and, in doing so, caused bodily harm to K.R. by dragging her body on the ground. Defendant was also charged by indictment with one count of criminal sexual assault, a Class 1 felony, in 15-CF-1365 (720 ILCS 5/11-1.20(a)(1) (West 2012)) in St. Clair County, Illinois. The indictment alleged that on November 8, 2015, defendant committed an act of sexual penetration when he, by the use of force, placed his penis in the vagina of M.W., born on June 8, 1959.

¶ 7    On November 25, 2015, defendant was arraigned before the circuit court. After receiving copies of the indictments in cases 15-CF-1364 and 15-CF-1365, defendant waived a reading of the charges and entered pleas of not guilty on all counts.

¶ 8    On April 4, 2016, the State filed a motion for joinder claiming that the facts underlying the charges in both above-referenced cases were part of the same comprehensive transaction. Specifically, the State asserted that defendant's victims, K.R. and M.W., had both reported that they did not know their assailant. Following the sexual assaults, both victims reported to a hospital where a sexual assault examination was

3

completed. Following defendant's arrest on November 11, 2015, the Belleville Police Department received forensic lab results from K.R.'s sexual assault kit, confirming that defendant's DNA profile matched the profile collected from K.R.'s vaginal swabs. During a subsequent interview with the Belleville Police Department, defendant confessed that he had sexually assaulted both K.R. and M.W. Shortly thereafter, forensic lab results from M.W.'s sexual assault kit confirmed that defendant's DNA profile also matched the profile collected from M.W.'s vaginal swabs. Additionally, the State argued that the offenses in both cases occurred approximately 0.7 miles apart in St. Clair County, Illinois, in the early morning hours. Moreover, defendant's victims were of similar age, race, and physical condition, and defendant's common method of perpetrating "involved *** pushing the victim down and then assaulting her in a secluded, but public, area" while "restrain[ing] the victim by the throat and also verbally threaten[ing] her."

¶ 9     On April 25, 2016, the circuit court held a hearing on the State's motion for joinder. After arguing the factors previously filed in its motion for joinder, the State also asserted that it "would seek to introduce evidence of both offenses in a trial of either offense on its own" under section 115-7.3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.3 (West 2016)) if the motion for joiner was denied. In response, defense counsel argued against joinder because the crimes were disparate in time and differed in many respects, including different class offenses, possible minimum and maximum sentences, and elements to prove guilt. Following argument, the court denied the State's motion and refrained from making a ruling regarding section 115-7.3 of the Code. The State elected to proceed to trial on the charges in 15-CF-1364. The court allowed the parties to file

procedural motions until May 20, 2016, including the State's motion to admit other sex crimes evidence under section 115-7.3 of the Code and defendant's motion to suppress.

¶ 10 On April 27, 2016, the State filed a notice of intent to introduce other-crimes evidence in 15-CF-1364 pursuant to section 115-7.3 of the Code. Relying on the same information contained in the State's motion for joinder, the State requested the circuit court to make a pretrial ruling to allow the introduction of evidence and testimony regarding evidence of the other offense committed by defendant in 15-CF-1365. Specifically, the State argued that the evidence would demonstrate defendant's "intent, motive, identity, absence of mistake, and course of conduct," given the allegations in both cases involved a common method of perpetration with "similar instances of sexual penetration to female victims that are similar in age, race, and physical stature." Following a hearing on June 15, 2016, regarding the State's notice of intent, the court took the matter under advisement and set both cases for a status hearing.

¶ 11 On July 1, 2016, the circuit court denied the State's request to introduce other-crimes evidence in 15-CF-1364. The court, however, allowed the State in 15-CF-1364, pursuant to the common law, to introduce evidence of defendant's criminal sexual assault against M.W. in 15-CF-1365 "for the purpose of showing the defendant's motive and intent or the existence of a common scheme or plan." In so ruling, the court determined that the evidence of defendant's sexual assault of M.W. would be probative of his motive and intent and would show evidence of a common scheme or plan. The court determined that the probative value of this evidence outweighed the prejudicial effect.

¶ 12    On November 21, 2016, the circuit court held a status hearing. Defendant, represented by counsel, indicated that he was not under any drugs, alcohol, or prescription medication, and he was not receiving treatment from a doctor while in the county jail. After the court addressed defendant, the State affirmed its understanding that "defendant would be entering a plea of guilty in both cases today." The State then detailed the specific facts underlying the charges against defendant in both cases and the terms of the plea agreement. In exchange for defendant's plea in 15-CF-1364, the State would recommend, and defendant would agree, to a consecutive sentence of 10 years on each count for a total of 20 years' imprisonment. In exchange for the defendant's plea in 15-CF-1365, the State would recommend, and defendant would agree, to a sentence of 10 years to run consecutively to the sentences in 15-CF-1364. Thus, under the plea agreement, defendant's collective sentences would total 30 years.

¶ 13    The circuit court then admonished defendant of the statutory ranges of punishment regarding each charge. In 15-CF-1364, the combined charges carried a minimum sentence of 12 years and a maximum sentence of 60 years, and in 15-CF-1365, the charge carried a minimum sentence of 4 years and a maximum sentence of 15 years. Given the statutory mandate that all three charges run consecutively, the statutory sentencing range was 16 to 75 years. In addition, all charges were nonprobational and defendant would be required to serve 85% of the sentences, followed by an extended MSR on the Class X felonies. The following colloquy took place between the court and defendant:

> "THE COURT: *** Mr. Humphries, *** [y]ou understand that I did not participate in those negotiations?
> THE DEFENDANT: Yes, sir.

6

THE COURT: And I'm not bound by those negotiations.
THE DEFENDANT: Yes, sir.
THE COURT: Do you understand that?
THE DEFENDANT: (Nodding.)
THE COURT: So that means I can sentence you *** to up to 75 years in the Illinois Department of Corrections if you plead guilty to these charges. I'm not agreeing to the 30 years."

Following a short recess to allow discussion between defendant and defense counsel, the court reiterated that it would not be conditionally concurring with the recommended 30-year sentence set forth by the State in the presented plea negotiations. Accordingly, defense counsel requested additional time to discuss with defendant, which the court granted.

¶ 14 On December 8, 2016, the circuit court held guilty plea proceedings in both 15-CF-1364 and 15-CF-1365. At the outset of the proceedings, the court addressed defendant regarding his use of medications. After admitting that he was currently taking Zoloft and Vistaril for major depressive disorder, defendant acknowledged that the use of the medications did not affect his ability to understand the proceedings.

¶ 15 The State then provided the terms of the plea negotiations. With regard to 15-CF-1364 (the offenses of aggravated criminal sexual assault against K.R.), the State informed the circuit court that both counts were subject to mandatory consecutive sentencing, an extended term of MSR of three years up to natural life and required defendant to report as a violent sex offender for life upon his release from IDOC. The State announced that the parties had reached a partially negotiated sentence, in exchange for defendant's guilty plea, whereby defendant would request no less than 10 years on each count, and the State would request no more than 15 years on each count. Thus, the total sentencing range in 15-CF-

7

1364 would be 20 to 30 years' imprisonment to be served at 85%, followed by an extended term of MSR of 3 years up to natural life.

¶ 16    With regard to 15-CF-1365 (the offense of criminal sexual assault against M.W.), the State informed the circuit court that the charge carried a mandatory consecutive sentence with case 15-CF-1364, an extended term of MSR for a period of three years up to natural life and required defendant to report as a violent sex offender for life upon his release from IDOC. The State announced that the parties had reached a partially negotiated plea agreement, whereby, in exchange for defendant's guilty plea, defendant would request a sentence of no less than 5 years, and the State would request no more than 15 years. Thus, under the terms of the plea agreement for all three charges, the total sentencing range was 25 to 45 years' imprisonment to be served at 85%, followed by 3 years up to natural life of MSR. Following the State's presentation of the plea negotiations, defense counsel agreed that the plea negotiations had been properly presented.

¶ 17    The circuit court subsequently addressed defendant in open court. First, the court stated the nature of the charge in count I of 15-CF-1364. Defendant acknowledged that he understood the charge and the allegations against him. Next, defendant affirmatively acknowledged that he understood the range of punishment, including the minimum and maximum sentences that could be imposed, and that the sentences carried an extended term of MSR of at least three years up to natural life. Defendant also understood that he would be pleading guilty to a nonprobational offense that would run consecutively to any other sentence that was imposed in 15-CF-1364 and 15-CF-1365. Defendant acknowledged that he understood how consecutive sentencing worked.

¶ 18   Next, the circuit court stated the nature of the charge in count II of 15-CF-1364. Defendant acknowledged that he understood the charge and the allegations against him for the additional act of sexual penetration in count II. Defendant affirmatively acknowledged that he understood the range of punishment, including the minimum and maximum sentences that could be imposed, and that the sentences carried an extended term of MSR of at least three years up to natural life. Similar to count I, defendant also understood that he would be pleading guilty to a nonprobational offense that would run consecutively to any other sentence that was imposed. The court addressed that the plea and conviction on counts I and II required defendant to report as a violent sex offender for the rest of his life upon his release from IDOC.

¶ 19   The circuit court then stated the nature of the charge in count I of 15-CF-1365. Defendant acknowledged that he understood the charge and the allegations against him. Defendant affirmatively acknowledged that he understood the range of punishment, including the minimum and maximum sentences that could be imposed, and that the sentences carried an extended term of MSR of at least three years up to natural life. Defendant also understood that he would be pleading guilty to a nonprobational offense that would run consecutively to the sentences imposed in counts I and II of 15-CF-1364. In addition, the court admonished defendant that the plea and conviction on count I of 15-CF-1365 required defendant to report as a violent sex offender for the rest of his life upon his release from IDOC. The defendant acknowledged that he understood.

¶ 20 The court further admonished defendant that, as a further consequence of his guilty plea, he would be required to submit to DNA profiling and sexually transmitted disease testing. The defendant acknowledged that he understood.

¶ 21 The circuit court continued to admonish defendant. The court cautioned defendant that he did not have to plead guilty. After explaining to defendant that counts I and II in 15-CF-1364 had been docketed and set for trial, the court, again, stated: "I want to make sure you understand you don't have to plead guilty." Defendant acknowledged that he understood. The court also informed defendant that he had "a constitutional right to a trial." The court proceeded to state to defendant that "if you don't plead guilty today, then we will proceed with your constitutionally protected trial right on January 23rd of 2017." Before continuing with the admonishments, the following colloquy took place between the court and defendant:

> "THE COURT: *** I'm going to go over with you what would happen if we do go to trial, and your alternative to pleading guilty is going to trial.
> First of all, *** I want to emphasize if you have any questions about anything that I'm saying or you want to take some time to talk with [your attorney] or if you want to ask me any questions about anything that I'm talking about with regard to your trial right, I want to make sure that you interrupt me. And I will not be offended if you do that. I want to make sure that you understand everything before we finish up here today—
> THE DEFENDANT: Okay."

¶ 22 Next, the circuit court provided defendant with a detailed overview of "what would happen if we do go to trial," which included jury selection followed by the State's presentation of evidence and witness testimony. The court informed defendant that, following the State's questioning of each witness, defendant "would [then] have the right[,] through [his attorney,] to ask questions." The court informed defendant that he had the

10

right to cross-examine "every witness," including "every witness that [the State] *** would call, you would have the right through [your attorney] to question them and cross examine them and test their credibility, test their believability." The court instructed defendant that he would be able to use a "notepad" to "write down questions that [you] want [your] attorney to ask." Defendant acknowledged that he understood and was able to follow along with the court's detailed description. After the State finished calling its witnesses, the court informed defendant that he would then have the right to call his own witnesses, although he did not have to call witnesses. Furthermore, the court informed defendant that a trial would allow defendant a full opportunity to present any evidence he wanted to present. Defendant acknowledged that he understood.

¶ 23    Defendant then asked the circuit court: "If I were to go to trial, would *** it be a chance that like charges could be reduced or anything?" The court informed defendant that there was a possibility, but the jury would decide between the greater and lesser charges. The court, again, informed defendant that "if you plead guilty, that's over," a jury trial would not take place. The court further informed defendant that by pleading guilty he would give up his right to challenge the way the scientific evidence in the case was obtained and evaluated, as well as the opinions and judgments of the testifying experts. Defendant indicated that he understood. In addition, defendant understood that if he pled guilty to all three charges, the court was bound by the plea agreement to impose a sentence between 25 to 45 years.

¶ 24    The circuit court proceeded to ask defendant if he had been promised anything, other than the plea agreement, to plead guilty. Defendant responded no. The court then asked

11

defendant if he had been threatened to plead guilty. Again, defendant responded no. The court also asked defendant why he was choosing to plead guilty. Defendant, in part, responded: "I just want to be able to have a chance to be back with my family." The court further asked defendant if he was pleading guilty because the possibility of a maximum punishment of 75 years existed if he went to trial. Defendant answered yes. The defendant then stated, "I understand the situation. I just feel like it would be better for me to plead guilty and, you know, take responsibility."

¶ 25　The State then provided the following factual basis for the charged offenses. According to the State, after defendant waived his *Miranda* rights, he admitted in an interview that he was a "sex addict and can't always control it." With regard to counts I and II of case 15-CF-1364, defendant admitted that he pushed K.R. off of her bike before he had forcible, nonconsensual vaginal sex with her for about five minutes. In a second interview, defendant admitted that he forced K.R., who appeared to be scared during the encounter, to also perform nonconsensual oral sex on him. In specifically addressing count I of case 15-CF-1365, defendant, after waiving his *Miranda* rights, identified himself in a surveillance video following M.W. in the same direction as the bike path. Once on the bike path, defendant pushed M.W. off of her bike and engaged in forcible, nonconsensual vaginal sex with her. Defendant acknowledged that M.W. appeared to be scared and intoxicated during the encounter.

¶ 26　Following the State's recitation of the factual basis as to all counts against defendant, defense counsel and defendant each affirmatively stated that the State would be

12

able to prove the above-mentioned facts at trial. Defendant then pled guilty to all three counts.

¶ 27 On January 9, 2017, the circuit court held a sentencing hearing in cases 15-CF-1364 and 15-CF-1365. At the outset, the court addressed defendant's use of medications. Defendant indicated that he was taking the same medications as he was at the plea negotiations hearing on December 8, 2016, and he confirmed that his ability to understand the proceedings was not affected by the use of such medication. The court then heard from defendant's victims, K.R. and M.W., who read their victim impact statements before the court, detailing the predatory nature in which defendant committed the sexual assaults. Following testimony, the State requested 45 years based on several aggravating factors, including the serious nature of the offenses in which defendant sexually assaulted two women in a violent and brutal manner, the serious physical and emotional harm defendant's conduct had caused, and the need for deterrence. Defense counsel requested 25 years based on several mitigating factors, including that defendant had taken responsibility for his actions, had no prior criminal history as an adult, and that defendant was a father to a young male child.

¶ 28 In addressing the factors in mitigation, the court considered that defendant had no prior criminal history. In addressing the factors in aggravation, the court considered that defendant's actions had caused and threatened physical and emotional harm to his female victims. As a result, the court believed it was necessary to incarcerate defendant to deter him from preying upon innocent people. The court then sentenced defendant to 45 years in IDOC followed by 3 years up to natural life of MSR. Upon release from IDOC, defendant

13

was required to report as a violent sex offender for the rest of his natural life, provide samples for genetic marker grouping, and undergo medical testing to determine the existence of sexually transmittable diseases. The court subsequently certified defendant as a sexual predator.

¶ 29 Following the imposition of defendant's sentences, the circuit court admonished defendant of his appeal rights. The court informed defendant that he had 30 days to file a motion to withdraw his guilty plea. If defendant filed this motion, the court would hold a hearing. If defendant proved a substantial error had occurred at the hearing, the court would start over with defendant's case. In addition, the court instructed defendant that he could file a motion to reconsider to ask the court for a lesser sentence. The court clarified that defendant had to first file the motion to reconsider with the circuit court before he "appeal[ed] to the Appellate Court that the sentence was excessive." The court specifically asked defense counsel to "explain this part of the process" to defendant. Lastly, the court stated: "Do you have any questions about your rights on appeal?" Defendant responded no, and the court adjourned.

¶ 30 On February 13, 2017, defendant filed a *pro se* motion to withdraw guilty plea and vacate sentence. Defendant claimed ineffective assistance of counsel and coercion, alleging that his trial attorney "promise[d] Plaintiff that if he took the plea[,] he would receive the minimum[,] which is 20 years." Referring to his sentence as "a defecto [*sic*] life sentence," defendant claimed it was excessive. In response to defendant's *pro se* motion, the circuit court appointed new counsel for defendant.

14

¶ 31 On April 18, 2017, the circuit court held a hearing on defendant's *pro se* motion to withdraw guilty plea and vacate sentence. Before addressing defendant's motion, the newly appointed counsel for defendant informed the court that, after speaking with defendant, defendant did not wish to pursue a claim of inadequate representation against his original defense counsel. In fact, defendant had expressed his desire to continue working with his original defense counsel. When asked by the court if this was true, defendant responded in the affirmative. After allowing counsel to withdraw from the case, the court reappointed defendant's original defense counsel and, following defense counsel's request, the court granted defendant 30 days to file an amended motion to withdraw guilty plea and vacate sentence.

¶ 32 On May 17, 2017, defendant filed a motion to reconsider sentence claiming that the circuit court did not give proper weight to the factors in mitigation or consider all sentencing alternatives. Defendant also claimed that the court had imposed inconsistent sentences that were "excessive in comparison with those imposed on persons with similar charges." Defendant requested a shorter term of imprisonment.

¶ 33 Additionally, on May 17, 2017, defendant filed an amended motion to withdraw guilty plea and vacate judgment. Defendant asserted that, at the time of his plea, the circuit court had failed to properly admonish defendant of his rights under Illinois Supreme Court Rule 402 (eff. July 1, 2012), including but not limited to: (1) the nature of the charges against him; (2) the minimum and maximum sentences; (3) his right to plead not guilty or persist in that plea; and (4) his right to a trial and that by pleading guilty he waived that right, as well as his right to confront the witnesses against him. Defendant also asserted

15

that his plea was not made knowingly and voluntarily, and the State had failed to provide a factual basis for the plea negotiations. Moreover, defendant claimed that the circuit court had failed to properly admonish him of his rights under Illinois Supreme Court Rule 605 (eff. Oct. 1, 2001), including but not limited to: (1) his right to an appeal and (2) his right to file a motion asking to have the judgment vacated and for leave to withdraw his guilty plea. Lastly, defendant, again, asserted that his sentence was excessive.

¶ 34    On June 12, 2017, the circuit court granted defense counsel leave to file an Illinois Supreme Court Rule 604(d) (eff. Feb. 6, 2013) certificate, which defense counsel subsequently filed on June 14, 2017.

¶ 35    On June 19, 2017, the circuit court held a hearing on defendant's May 17, 2017, motion to reconsider sentence and amended motion to withdraw guilty plea and vacate judgment. In addressing defendant's amended motion to withdraw guilty plea and vacate judgment, defense counsel directed the court to reference the filed motion by stating, "I would stand solely on what's contained in the written motion."

¶ 36    In response, the State objected to defendant's motion, arguing that defendant's pleading did not show a misapprehension of the facts or law. The State also argued that defendant was present at the guilty plea proceedings when the State presented the factual basis. As such, defendant's argument that no factual basis was provided to the court was refuted by the record. Moreover, the State asserted that defendant was specifically advised that he did not have to plead guilty and could proceed to a jury trial. Defendant was also properly admonished as to sentencing ranges, and he confirmed that his plea of guilty was being made knowingly and voluntarily. The State further argued that defendant had been

16

admonished of his appeal rights at the time of sentencing, including his right to file a motion to withdraw guilty plea within 30 days. According to the State, defendant was advised of the "trial process, all of the procedures that he was waiving and what would happen if he chose not to waive those procedures." Lastly, the State asserted that the transcript of proceedings demonstrated that defendant was not confused. In support, the State pointed out that defendant had "said he understood everything," and defendant had confirmed that his plea was being made knowingly and voluntarily.

¶ 37    Following argument by the parties, the circuit court, in reviewing the transcript of the guilty plea and sentencing proceedings, found compliance with Illinois Supreme Court Rule 402 (eff. July 1, 2012) and confirmed that defendant had been advised of his appellate rights consistent with Illinois Supreme Court Rule 605 (eff. Oct. 1, 2001) at the time of sentencing. The court denied defendant's amended motion to withdraw guilty plea and vacate judgment "for those reasons stated." The court refrained from ruling on defendant's contention that his sentence was excessive until the court heard argument on defendant's motion to reconsider sentence.

¶ 38    Next, the circuit court heard argument on defendant's motion to reconsider sentence. First, defense counsel, in arguing that defendant's sentence was excessive, asserted that the court had failed to give enough weight to the factors in mitigation, including that defendant had no prior criminal history and was a father. Defense counsel requested a reduction in defendant's sentence to 25 years. In response, the State argued that a motion to reconsider sentence was not a proper remedy under Illinois case law, given defendant entered into a partially negotiated plea. According to the State, by accepting the partially negotiated plea

17

agreement, defendant agreed "not to challenge any sentence imposed within that range because he [is], in fact, agreeing to receive a sentence within that range." In the alternative, if the court were to consider the motion, the State argued that, in addressing defendant's first argument in the motion, the sentence was appropriate, given that the court had given proper weight to the mitigating factors and considered all available sentences. Next, with regard to defendant's second argument that the sentence was inconsistent, the State, citing to *People v. Fern*, 189 Ill. 2d 48, 56 (1999), argued that a court's imposition of a lesser sentence in another case had no bearing on whether the sentence in the instant case was excessive. The State requested the court to uphold defendant's sentence of 45 years.

¶ 39    Following argument by the parties, the circuit court denied defendant's motion to reconsider sentence. Although the court considered that defendant had no prior criminal history, "what drove" the court's sentencing decision "were the facts and circumstances of the two cases and how they were carried out [in a] predatory nature." The court informed defendant that he had 30 days to file a notice of appeal. Defendant acknowledged that he understood. On June 27, 2017, defendant filed a timely notice of appeal.

¶ 40                                    II. Analysis

¶ 41                             A. Plea Admonishments

¶ 42    Pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012), every defendant who enters a plea of guilty has a due process right to be properly and fully admonished. *People v. Whitfield*, 217 Ill. 2d 177, 188 (2005). The goal of Rule 402 is to ensure that a defendant understands his plea, the rights he has waived, and the consequences of his actions. *People v. Dougherty*, 394 Ill. App. 3d 134, 138 (2009) (citing *People v. Johns*, 229

18

Ill. App. 3d 740 (1992)). The rule requires "substantial, not literal, compliance with its provisions." *People v. Kranz*, 58 Ill. 2d 187, 192 (1974) (citing *People v. Mendoza*, 48 Ill. 2d 371, 373-74 (1971)). " 'Substantial compliance' means that although the trial court did not recite to the defendant, and ask defendant if he understood, all the components of Rule 402(a), the record nevertheless affirmatively and specifically shows that the defendant understood them." *Dougherty*, 394 Ill. App. 3d at 138 (citing *People v. Walker*, 109 Ill. 2d 484, 499 (1985)). Illinois courts have found substantial compliance with Rule 402 where the record indicates a defendant understandably and voluntarily entered his plea, even if the circuit court failed to admonish defendant of a specific provision. *Dougherty*, 394 Ill. App. 3d at 139 (citing *People v. Sutherland*, 128 Ill. App. 3d 415, 417 (1984)).

¶ 43    Failure to properly admonish a defendant does not automatically establish grounds for reversing judgment or vacating a guilty plea. *People v. Davis*, 145 Ill. 2d 240, 250 (1991) (citing *People v. Cohn*, 91 Ill. App. 3d 209, 213 (1980)). Whether reversal is required depends on whether real justice has been denied or whether defendant had been prejudiced by the inadequate admonishment. *People v. Dudley*, 58 Ill. 2d 57, 60-61 (1974). It is the defendant's burden to establish prejudice. *Dougherty*, 394 Ill. App. 3d at 139 (citing *Dudley*, 58 Ill. 2d at 57). We review a circuit court's decision to deny a defendant's motion to withdraw guilty plea for an abuse of discretion. *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009). We review *de novo* whether the circuit court properly admonished defendant and complied with Illinois Supreme Court Rule 402. *People v. Dismuke*, 355 Ill. App. 3d 606, 608 (2005).

¶ 44    1. Rule 402(a)(3): Defendant's Right to Persist in His Plea of Not Guilty

¶ 45    Defendant first argues that his guilty plea should be vacated where the circuit court violated Illinois Supreme Court Rule 402(a)(3) (eff. July 1, 2012) by failing to properly admonish him that he had the right to persist in his plea of not guilty. In response, the State argues that the court substantially complied with Rule 402(a)(3) before defendant pled guilty, thus, the court did not abuse its discretion in denying defendant's amended motion to withdraw guilty plea and vacate sentence. We agree with the State.

¶ 46    On November 25, 2015, at defendant's arraignment, he entered pleas of not guilty to all three counts alleged in 15-CF-1364 and 15-CF-1365, which were followed by more than a year of continuances, disputed pretrial hearings, and delays. Eventually, approximately six weeks before the January 23, 2017, trial setting, defendant entered into a plea agreement with the State.

¶ 47    On December 8, 2016, pursuant to the plea negotiations, defendant pled guilty to all three counts. During the plea proceedings, the circuit court acknowledged its understanding of defendant's "intention to plead guilty today"; however, the court also explicitly cautioned defendant in open court that "you don't have to plead guilty." In fact, after explaining to defendant that counts I and II in 15-CF-1364 had been previously docketed and set for trial, the court alerted defendant with the following statement: "I want to make sure you understand you don't have to plead guilty." Defendant acknowledged that he understood. Moreover, the court informed defendant that the "alternative to pleading guilty" was to "proceed with your constitutionally protected trial right on January 23rd of 2017."

20

¶ 48   Although the circuit court did not explicitly state verbatim that defendant had a right to "persist in his plea of not guilty," the court substantially complied with Illinois Supreme Court Rule 402(a)(3) where the record affirmatively and specifically demonstrates that defendant understood he could plead guilty pursuant to the terms of the plea negotiations with the State, or, alternatively, persist in his pleas of not guilty and proceed to a jury trial. Accordingly, the court did not abuse its discretion in denying defendant's motion to withdraw guilty plea and vacate sentence.

¶ 49      2. Rule 402(a)(4): Right to be Confronted With the Witnesses Against Him

¶ 50   Defendant also argues that his guilty plea should be vacated where the circuit court violated Illinois Supreme Court Rule 402(a)(4) (eff. July 1, 2012) by failing to admonish him that by pleading guilty he was waiving his right to be confronted with the witnesses against him. In response, the State asserts that the court substantially complied with Rule 402(a)(4) before accepting defendant's guilty plea. We agree with the State.

¶ 51   Similar to the above admonishment, the circuit court did not explicitly state verbatim to defendant "that by pleading guilty [defendant] waives *** the right to be confronted with the witnesses against him." Despite this, the court substantially complied with Rule 402(a)(4) before accepting defendant's guilty plea. The circuit court specifically provided defendant with a detailed overview of "what would happen if we do go to trial," which included jury selection followed by the State's presentation of evidence and witness testimony. The court informed defendant that, following the State's questioning of each witness, he would have the right to cross-examine "every witness," including "every witness that [the State] *** would call, you would have the right through [your attorney]

21

to question them and cross examine them and test their credibility, test their believability." The court instructed defendant that he would be able to use a "notepad" to "write down questions that [you] want [your] attorney to ask." Defendant acknowledged that he understood.

¶ 52 Accordingly, the record affirmatively and specifically demonstrates that defendant understood that if he persisted in his pleas of not guilty, he would proceed to a jury trial where he would be confronted with the witnesses against him and be permitted to cross-examine each of the witnesses. Because the record demonstrates substantial compliance with Illinois Supreme Court Rule 402(a)(4), the circuit court did not abuse its discretion in denying defendant's motion to withdraw guilty plea and vacate sentence.

¶ 53 B. Defendant's Right to Challenge Only His Sentence on Appeal

¶ 54 Next, defendant argues that he is entitled to withdraw his guilty plea because the circuit court failed to inform him at the guilty plea hearing that he could not challenge only his sentence on appeal as a consequence of agreeing to a sentencing cap. Because he lacked "all of the information which was of consequence to his plea of guilty," he claims his guilty plea was not knowing and voluntary. We note at the outset that defendant has conceded that his arguments are not supported by statute or case law but grounded on "principles of fair play." We disagree with the defendant for several reasons.

¶ 55 In instances where the defendant has agreed to plead guilty to certain charges in exchange for the State's recommendation of a sentencing cap, a defendant is required to file a motion to withdraw his plea of guilty in the circuit court before challenging his

22

sentence on appeal. *People v. Linder*, 186 Ill. 2d 67, 74 (1999). In addition, Illinois Supreme Court Rule 604(d) states:

> "No appeal shall be taken upon a negotiated plea of guilty challenging the sentence as excessive unless the defendant, within 30 days of the imposition of sentence, files a motion to withdraw the plea of guilty and vacate the judgment." Ill. S. Ct. R. 604(d) (eff. Feb. 6, 2013).

"Where the sentence imposed is within the agreed upon cap, [as the sentence here was,] allowing the defendant to seek reconsideration of his sentence without also moving to withdraw his guilty plea unfairly binds the State to the terms of the plea agreement while giving the defendant the opportunity to avoid or modify those terms." *Linder*, 186 Ill. 2d at 74. "In summary, for a defendant to prevail in a challenge to a sentence entered pursuant to a negotiated plea agreement, the defendant must (1) move to withdraw the guilty plea and vacate the judgment, and (2) show that the granting of the motion is necessary to correct a manifest injustice." *People v. Evans*, 174 Ill. 2d 320, 332 (1996).

¶ 56    First, in determining the voluntariness of a guilty plea, the circuit court looks to the requirements of Illinois Supreme Court Rule 402 (eff. July 1, 2012). As we have previously determined, the record demonstrates that the court substantially complied with Rule 402(a) prior to accepting defendant's guilty plea. Additionally, and most importantly, Rule 402 does not require courts to admonish defendants "as to the ramifications of a sentencing cap" at the guilty plea hearing. See *People v. Johnson*, 2018 IL App (3d) 150679, ¶ 22. Despite defendant's request, we refuse to conclude that the circuit court had a duty to inform defendant as to the effect of the sentencing cap on his ability to appeal his sentence.

¶ 57 Second, the circuit court also looks to the requirements of Illinois Supreme Court Rule 402(b) (eff. July 1, 2012) in determining the voluntariness of a guilty plea. Rule 402(b) requires the court to have the terms of the plea agreement stated in open court and, in questioning the defendant personally, (1) confirm the terms of the plea agreement and (2) determine whether any force or threats or any promises apart from a plea agreement were used to obtain the plea. Ill. S. Ct. R. 402(b) (eff. July 1, 2012). Again, here, the record demonstrates that defendant's plea of guilty, which was made under the terms of the plea agreement, was voluntary and was not made as the result of force, threats, or promises other than the plea agreement. Consequently, the circuit court complied with Illinois Supreme Court Rule 402(b) before accepting defendant's guilty plea.

¶ 58 Lastly, Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001) provides the admonishments a circuit court must give when imposing sentence on a defendant who has pled guilty pursuant to a negotiated plea agreement. Rule 605(c) requires the following:

"(1) that the defendant has a right to appeal;

(2) that prior to taking an appeal the defendant must file in the trial court, within 30 days of the date on which sentence is imposed, a written motion asking to have the judgment vacated and for leave to withdraw the plea of guilty, setting forth the grounds for the motion; [and]

(3) that if the motion is allowed, the plea of guilty, sentence and judgment will be vacated and a trial date will be set on the charges to which the plea of guilty was made[.]" Ill. S. Ct. R. 605(c) (eff. Oct. 1, 2001).

Here, the court, again, had no duty at the time of sentencing to advise defendant as to the effect of the sentencing cap on his ability to appeal his sentence. Instead, the record demonstrates that the circuit court properly admonished defendant as to the steps he needed to take in order to timely file a motion to withdraw guilty plea and vacate judgment in compliance with Illinois Supreme Court Rule 605(c)(2).

¶ 59    Accordingly, based on the aforementioned, we find defendant's argument meritless where defendant has failed to prove that the granting of his motion to withdraw the guilty plea and vacate the judgment was necessary to correct a manifest injustice. Because the record establishes that defendant's plea of guilty was entered knowingly and voluntarily, we conclude that the circuit court did not abuse its discretion in denying defendant's motion to withdraw guilty plea and vacate sentence.

¶ 60                            C. Ineffective Assistance of Counsel

¶ 61    Lastly, defendant asserts that he was deprived of his right to effective assistance of counsel during plea negotiations when counsel failed to explain, and clearly did not understand,[1] that the sentencing cap precluded defendant from appealing his sentence. For that reason, defendant, again, claims that his guilty plea was not entered knowingly and voluntarily. We disagree.

_____

[1]Following defendant's imposition of sentence, the circuit court informed defendant that he had 30 days to file a motion to withdraw his guilty plea. In addition, the court instructed defendant that he could file a motion to reconsider to ask the circuit court for a lesser sentence before he appealed to the appellate court. The court, although not required to admonish defendant of the effect of the sentencing cap on his ability to appeal his sentence, did not clarify the requirements set forth by *Linder.* We note, however, that the court specifically asked counsel "to explain this part of the process" to defendant. Defendant now appeals, arguing that counsel's performance fell below an objective standard of reasonableness when counsel did not attempt to correct the court's "incorrect admonishments," and counsel, based on his own mistaken belief that a motion to reconsider the sentence was viable, failed to advise defendant of a critical consequence of his plea.

¶ 62     Claims that trial counsel was ineffective during the guilty-plea process are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *People v. Brown*, 2017 IL 121681, ¶ 25 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Where, as here, a defendant asserts a claim of ineffective assistance during the guilty-plea process, defendant must establish that his counsel's performance fell below an objective standard of reasonableness, and also that " 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Brown*, 2017 IL 121681, ¶ 26 (quoting *Hill*, 474 U.S. at 59). Courts have held that " '[a] conclusory allegation that a defendant would not have pleaded guilty and would have demanded a trial is insufficient to establish prejudice' " for purposes of an ineffective assistance of counsel claim brought by a guilty-plea defendant. *Brown*, 2017 IL 121681, ¶ 26 (quoting *People v. Valdez*, 2016 IL 119860, ¶ 29 (citing *People v. Hughes*, 2012 IL 112817, ¶ 64, and *People v. Hall*, 217 Ill. 2d 324, 335 (2005)). Instead, the defendant " ' "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." ' " *Brown*, 2017 IL 121681, ¶ 40 (quoting *Valdez*, 2016 IL 119860, ¶ 29, quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)). A defendant may not "satisfy the requisite prejudice prong based solely on the bare allegation that the defendant would have rejected the plea if his guilty-plea counsel had provided accurate advice." *Brown*, 2017 IL 121681, ¶ 47; see also *Valdez*, 2016 IL 119860, ¶ 29 ("[a] conclusory allegation that a defendant would not have pleaded guilty and would have demanded a trial is insufficient to establish prejudice" for purposes of the *Strickland* analysis (citing *Hughes*, 2012 IL 112817, ¶ 64)).

¶ 63    Defendant's allegation of ineffectiveness, which involves his understanding of the consequences of his guilty plea as it related to his appeal rights, is insufficient to establish prejudice. Defendant was charged with two counts of aggravated criminal sexual assault, both Class X felonies, and one count of criminal sexual assault, a Class 1 felony, that included a sentencing range of 16 to 75 years in prison. Given the predatory nature in which defendant carried out these crimes, it is entirely possible that he would have received a sentence on the higher end of the range.

¶ 64    By pleading guilty and agreeing to the negotiated plea agreement, defendant received a sentencing range of 25 to 45 years. It is important to note that, under the first proposed plea agreement that the circuit court refused to accept, defendant's collective sentences would have been 30 years. Following the court's refusal to accept this plea agreement, however, the parties negotiated the current plea agreement at issue where defendant was willing to accept a higher minimum sentencing range of 25 years, as compared to the required, mandatory minimum sentence of 16 years that defendant could have potentially received had he pled not guilty and insisted on going to trial.

¶ 65    Moreover, defendant has failed to present any evidence that the ability to appeal his sentence played an important role in his decision to accept the negotiated plea agreement. Instead, ample evidence in the record demonstrates that a sentencing cap of 45 years was a compelling reason that defendant chose to plead guilty. In particular, defendant vocalized his desire to avoid a potential 75-year sentence for the opportunity to see his family sooner. As such, we cannot accept defendant's bare allegations that he would have persisted in his plea of not guilty had counsel provided accurate advice, especially given the strong

27

evidence of guilt against defendant, which includes defendant identifying himself on the surveillance video before he attacked and sexually assaulted M.W., and his confession to both of the crimes against his victims, K.R. and M.W.

¶ 66 Accordingly, based on these circumstances, defendant has failed to establish the requisite showing of prejudice where he has failed to show that a decision to reject the negotiated plea agreement would have been rational under the circumstances. Because a defendant must satisfy both prongs of *Strickland*, we may reject a claim of ineffective assistance without reaching the performance prong if we conclude defendant did not satisfy the prejudice prong. See *People v. Graham*, 206 Ill. 2d 465, 476 (2003) ("That is, if an ineffective-assistance claim can be disposed of because the defendant suffered no prejudice, we need not determine whether counsel's performance was deficient."). Consequently, we need not address defendant's argument that defense counsel, based on his own mistaken belief that a motion to reconsider the sentence was viable, failed to advise defendant of a critical consequence of his plea.

¶ 67 Thus, the circuit court's order denying defendant's amended motion to withdraw guilty plea is affirmed where the record sufficiently demonstrates substantial compliance with Illinois Supreme Court Rule 402(a) (eff. July 1, 2012). Defendant's argument that his partially negotiated guilty plea was not made knowingly and voluntarily is without merit, given the court properly admonished defendant at the time of imposing sentence, and the guilty plea resulted in a sentence within the negotiated range. Lastly, defendant was not prejudiced where counsel did not advise defendant that he would be precluded from

28

appealing only his sentence if he accepted the negotiated plea agreement with a 45-year sentencing cap.

¶ 68                                    III. Conclusion

¶ 69    Based on the foregoing, judgment of the circuit court of St. Clair County is hereby affirmed.


¶ 70    Affirmed.